IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Warren Polston, | Case No. 09 CV 2896 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | |
| John Shartle, | JUDGE JACK ZOUHARY |
| Respondent. | |

Before the Court is *pro se* Petitioner Warren Polston's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). Petitioner, who is incarcerated in the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), filed this action against Respondent F.C.I. Elkton Warden John Shartle. He asks this Court to reverse his conviction for a disciplinary infraction while incarcerated at the Federal Correctional Camp (FCC) in Lewisburg, Pennsylvania.

## BACKGROUND

Petitioner pled guilty to "[c]onspiracy to possess with intent to distribute at least 500 grams of Cocaine Hydrochloride in violation of 21 U.S.C. 846 and 841(b)(1)(B)" (Pet. at 1), and was sentenced to 5 years in prison, followed by 4 years of supervised release.

Petitioner states, "[w]hile incarcerated at [Lewisburg] Camp, the Petitioner received [an] Incident Report (305) for possession of anything unauthorized."[1] In the report, SIS Tech Richard Eder states prison staff conducted a random "pat-down" search of inmates at the FCC Allenwood

---

[1] The incident report attached to the Petition reveals the incident took place at "FCC [Federal Correctional Complex] Allenwood Garage." The FCC Allenwood is located in White Deer, Pennsylvania.

Garage on December 16, 2008.  During the course of the search, he discovered a cell phone in the coat pocket of Petitioner's jacket.  Eder explained that Petitioner "initially attempted to walk away from me when I called him to be pat searched" (Pet.'s Ex. 6).  An incident report was prepared and Petitioner was charged with Possession of Anything Unauthorized.  The report was delivered to Petitioner on December 16, 2008 at 2:00 p.m.

A Unit Discipline Committee (UDC) hearing was held on December 19, 2008.  At the hearing, Petitioner claimed the prison staff had advised everyone to exit the garage to prepare for a pat-down. When he was told to grab a coat, he explained he did not have one.  Petitioner states he grabbed a random coat and later felt something in his pocket, subsequently discovered to be a cell phone. Petitioner denied ownership of both the coat and phone.  The Committee found against Petitioner and he was sanctioned with the loss of visitation, commissary, and telephone use for 180 days.  The UDC Chairman advised Petitioner of his findings and his right to appeal within 15 calendar days.

Petitioner denies receipt of a copy of the incident report until January 21, 2009, one month after his hearing.  He filed a Request for Administrative Remedy on January 22. The Request was received on February 13, 2009 and rejected as untimely by the Lewisburg United States Penitentiary (USP) Administrative Remedy Coordinator.[2]  The Coordinator remarked: "A check with your counselor indicates you would have received this sanction in the mail on 12/20/08.  You were at the hearing and thus this is untimely" (Pet.'s Ex. 4).  The Coordinator received a duplicate Request on February 27, 2009 and rejected it as untimely as well.

---

[2]

Petitioner's mailing address on the Rejection Notice is USP Lewisburg in Lewisburg, Pennsylvania.

After Petitioner was transferred to F.C.I. Elkton, he filed another Request for Administrative Remedy to the Northeast Regional Office Coordinator. This Request was received on March 16, 2009 and rejected as untimely on April 2, 2009. He appealed the Regional Office's rejection to the Central Office, which, on May 20, 2009, concurred with the rationale rejecting the Request.

## ANALYSIS

Petitioner now argues his First Amendment right to petition the government and his right to due process were denied by Respondent who rejected his appeals through the administrative process, specifically failing to accept his claim that he did not receive the UDC Chairman's report until January 21, 2009. He blames the "tardiness of the UDC's written report" for depriving him of his appeal rights.

With regard to his due process claim, Petitioner cites *Wolff v. McDonnell*, 418 U.S. 539 (1974). He maintains *Wolff* entitles him to certain constitutional safeguards during the course of a prison disciplinary hearing. While he acknowledges receipt of the incident report on December 16, 2008, he claims he was denied the right to call witnesses. If he had been permitted to do so, he claims he would have asked his work detail supervisor to testify that all inmates were told to exit the garage in preparation for a pat-down and to "grab any coat." Moreover, he claims Correctional Officer Lewstowski would have testified that Petitioner's "personal institution issued coat was on my bunk in my living quarters. Therefore, the coat in which the cellphone was found, wasn't mine" (Pet. at 4). Because the UDC Chairman declined to interview these witnesses, Petitioner asserts his right to due process was violated.

3

## EXHAUSTION

A federal prisoner must exhaust his available remedies before filing a 28 U.S.C. § 2241 petition for habeas corpus relief. *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981). Federal prisoners who procedurally default on their administrative claims must demonstrate cause and prejudice for the omission. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996); *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986). Under the Bureau of Prison's (BOP) Administrative Remedy Program, the first level of appeal from a UDC decision is an appeal to the "institution staff member designated to receive such Requests (ordinarily a correctional counselor)." 28 C.F.R. § 542.14(c)(4).[3]

Petitioner appealed his December 19, 2008 disciplinary conviction to the Administrative Coordinator on January 22, 2009. The appeal was received on February 13, 2009 and denied on the same date as untimely. Petitioner's later attempts to appeal this decision were deemed unsuccessful for the same reason. Thus, he did not exhaust his administrative remedies by timely appealing the UDC's decision. Moreover, Petitioner failed to demonstrate cause for his procedural default. While he argues he did not receive the report from the UDC hearing until January 21, 2009, the record refutes this claim. The first rejection notice indicates Petitioner was present at his UDC hearing. At that time, he was aware of the UDC's findings. Moreover, the report is pre-printed with the following

---

[3]

Although the incident report indicates the right to appeal within 15 calendar days, the Code of Federal Regulations provides:

> The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.

28 C.F.R. §542.14(a). The discrepancy is not dispositive because Petitioner failed to meet the later of the two deadlines.

statement: "[t]he Committee Advised The Inmate Of Its Findings And Of The Right To File An Appeal Within 15 Calendar Days." This line is checked on the final incident report.[4] Petitioner offers no explanation why he failed to attempt to secure a copy of the report before allegedly receiving a copy 32 days after the UDC hearing. Because Petitioner has failed to establish cause for failing to exhaust his administrative appeal, he has procedurally defaulted his claims. *See Moscato*, 98 F.3d at 761.

### CHALLENGE TO INCIDENT REPORT

Even if Petitioner established cause for failing to exhaust his administrative appeal, he was not prejudiced because his underlying claim lacks merit. While he seeks an order expunging the incident report from his record because he was allegedly denied due process, such relief is unwarranted.

The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside prison administrator decisions grounded on some basis in fact. *See Wolff*, 418 U.S. at 556 (noting "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed"). Furthermore, administrative sanctions are not comparable to a criminal conviction. *Id.* Thus, "neither the amount of evidence necessary to support such a conviction, . . . nor any other standard greater than some evidence applies in this context." *Superintendent, Mass. Corr.*

---

[4]

A typed note attached to the petition from "Yvonne" to "Scott" indicates she rejected Petitioner's appeal twice as untimely. The note mentions her conversation with Sam Hummer, who suggested Petitioner should have received a copy of the incident report the day after the hearing. Scott wrote a response to Yvonne directly below her typed notes, stating Petitioner received a copy of the incident report on December 16, 2008 and December 19, 2008.

Petitioner identifies Sam Hummer as a prison staff member, and the Court assumes Scott and Yvonne are prison staff as well. Petitioner refutes their statements as "bald assertions."

*Inst. v. Hill*, 472 U.S. 445, 456 (1985).  Insofar as Petitioner argues more evidence should have been examined before his guilt was determined, he cannot sustain his claim.

Nothing in the regulations entitled Petitioner to present witnesses on his own behalf.  *See* 28 C.F.R. § 541.15.  The  UDC weighed the statement of Eder, and the fact that Petitioner attempted to avoid the pat-down search.  The UDC found Petitioner was not authorized to have a cell phone and judged him guilty of the relevant infraction.  As the UDC's decision is supported by "some evidence" in the record, there is no basis upon which this Court could set aside the decision.

Finally, considering the sanctions imposed for his infraction, Petitioner was provided all the due process to which he was entitled.  The due process requirements outlined in *Wolff* apply only when the prison's actions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner,* 515 U.S. 472, 484 (1995), or that lead to the loss of good time credit.  *Santos v. Bureau of Prisons*, 2006 WL 709509, at *3 n. 4  (M.D. Pa. 2006). While the loss of a prisoner's good time credits affords certain procedural safeguards, Petitioner's infraction resulted only in the temporary loss of telephone, visitation and commissary privileges, none of which implicate a protected liberty interest.  *See, e.g., Santos*, 2006 WL 709509, at *2 (citing *Sandin*, 515 U.S. at 484).

### CONCLUSION

Based on the foregoing, this Petition is dismissed with prejudice pursuant to 28 U.S.C. § 2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith and no certificate of appealability shall issue.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 21, 2010

6